Mo. Pac. R. R. Co., Thompson, Trustee v.
Ben M. Hogan.

5-1002                                    292 S. W. 2d 263

Opinion delivered July 2, 1956.

*Pat Mehaffy* and *S. Hubert Mayes,* for appellant.

*Neill Bohlinger,* for appellee.

Minor W. Millwee, Associate Justice. Appellant, Missouri Pacific Railroad Company, brought this action against appellee, Ben M. Hogan, to recover certain demurrage charges alleged to be due on freight cars delivered to appellee as a subcontractor in the construction of a government arsenal near Pine Bluff, Arkansas. The case was tried before the circuit court without a jury, upon certain stipulations and exhibits resulting in a judgment for appellant in the sum of $1,715.98 with interest at 6% from the date of institution of the suit. The principal issue on this appeal is whether appellant

was entitled to judgment for $2,195.96, the amount sued for, or the sum found due by the trial court.

According to the stipulations, the U. S. Government was engaged in the construction of the arsenal in 1952 and 1953 when appellee was a subcontractor in the project under contracts with prime contractors for the government requiring the use of large quantities of cement, lime and gravel within the arsenal area. The area was rather extensive and considerations of security required that ingress and egress be highly restricted. Appellant already has a switching point known as Baldwin, Arkansas which was located within the area. In order that carlot freight shipments might be delivered to the several contractors and subcontractors, the government constructed and operated a system of tracks within the area which connected with the lines of appellant and another railway company at Baldwin.

The government also constructed five sidetracks at Baldwin, which connected with the two railway lines and with the main line trackage of the government within the area. These sidetracks were known as "interchange tracks" and appellant's train crews were permitted to penetrate the arsenal area only as far as Baldwin for the purpose of placing loaded freight cars upon the interchange tracks and picking up empty cars which had been placed back on said tracks after being unloaded and returned from spur tracks assigned to the various contractors within the area. All switching, hauling and car spotting within the arsenal beyond Baldwin was done by the government over its tracks and with its equipment operated by the Corps of Engineers of the U. S. Army. Appellee paid the Corps of Engineers at the rate of seven dollars per car for its services in switching, spotting and transporting the cars between the interchange tracks and an unloading facility within the arsenal area assigned to appellee and known as Hogan Spur. This arrangement was in effect when both intrastate and interstate shipments were made to appellee and upon which the demurrage charges were made.

It was s t i p u l a t e d that Demurrage Rules and Charges, I. C. C. No. 4227, Freight Tariff N. 4-Z, issued January 10, 1950 were in effect during the time of the shipments involved herein. These tariffs had been duly published and filed with the Arkansas Public Service Commission. Rule 3, Sec. E of Tariff 4-Z, and a note thereto, provide: "Except as otherwise provided in Section B, Paragraph 1, of this rule, on cars to be delivered on interchange tracks of industrial plants performing the switching service for themselves or other parties, time will be computed from the first 7:00 A. M. after actual or constructive placement on such interchange tracks until return to the same or another interchange track. Time computed from actual placement on cars placed at exactly 7:00 A. M. will begin at the same 7:00 A. M.; actual placement to be determined by the precise time the engine cuts loose. (See Rule 2, Section A, Paragraph 2, Page 40, Rule 4, Section C, page 43, Rule 5, page 44 and Rule 6, page 45.) Cars returned loaded will not be recorded released until necessary billing instructions are furnished.

"NOTE. Where two or more parties each with its own power take delivery from the same interchange track, or where this railroad company uses the interchange track for other cars, or where the interchange track is not adjacent to the plant and the industry uses this railroad's tracks to reach same, a notice of placement shall be sent or given to the consignee and time will be computed from the first 7:00 A. M. thereafter."

Rule 4, Sec. C. of said Tariff 4-Z reads: "Delivery of cars upon other than public delivery tracks or upon industrial interchange tracks (except as provided in Note in Rule 3, Section E., page 42), or written notice sent or given to consignee or party entitled to receive same, of readiness to so deliver, will constitute notification to consignee. (See Rule 5, Section A, Paragraph 1, page 44 and Rule 8, Section D, Paragraph 1 (b), page 47.)"

There is no dispute as to the number of shipments involved or the correctness of the tariff rates and taxes charged to appellee. The primary issue here relates only to the proper basis for computing demurrage charge on the several shipments. Appellee contends, and the trial court found, that in computing the charges the detention time should have been computed from the time of the delivery of each car by the government to the Hogan Spur to be unloaded by appellee until such time as the car was unloaded and the government crew was notified that the cars were available to be returned to the interchange track. The charges of $2,195.96 alleged to be due by the appellant were computed from the time of delivery of the cars and their placement on the interchange tracks at Baldwin until such time as the cars were returned to the interchange tracks by the Corps of Engineers and made available to appellant.

This question has been before the Interstate Commerce Commission and the federal courts in several cases. It was before the U.S. District Court for the Eastern District of Arkansas in *St. Louis-Southwestern Ry. Co.* v. *Farrell,* 114 F. Supp. 486, under a state of facts identical with those in the instant case except that different parties and only intrastate shipments were involved. In that case, the other railroad serving the same government arsenal area was held entitled to recover demurrage charges from consignee subcontractors computed on the same basis used by appellant in the instant case. In a well considered opinion the court held that the arsenal was an "industrial plant" within the meaning of Rule 3, Sec. G., supra; that delivery on the interchange tracks at Baldwin was delivery to the subcontractors; that the interchange tracks were "industrial interchange tracks" and not "public delivery tracks" within the meaning of Rule 4, Sec. G., supra; and that no notice of delivery upon said tracks was required by the tariffs. The court made certain "Conclusions of Law" which include the following: "3. Under the tariffs delivery of the several freight cars involved in this case to the interchange tracks at Baldwin was delivery to the defend-

ants, and no notice of the placement of such cars on said tracks was required to complete the delivery. Said cars were not re-delivered to the plaintiff until they were placed upon the outgoing interchange track by the Corps of Engineers.

"4. The fact that defendants were unable to deliver the empty outgoing cars to the plaintiff except through the medium of switching facilities of the Government does not relieve the defendants of the obligation to pay demurrage, nor the plaintiff of the requirement to collect it . . .

"6. Even if it be assumed that to hold the defendants liable for demurrage in this case will work a hardship on them or will be to some extent inequitable, such hardship or inequity under the law applicable to demurrage charges is insufficient alone to excuse the defendants from liability.

"7. Plaintiff is entitled to judgment for the amount sued for, plus interest and costs." Other cases to the same effect are: *Madsen Construction Co.* v. *Great Northern Ry. Co.*, 231 I. C. C. 283; *Federal Roofing & Siding Co.* v. *Southern Pac. Co.*, 269 I. C. C. 445; and *Chicago B. & Q. R. Co.* v. *Blunk,* 101 F. Supp. 219.

In view of a stipulation to the effect that the government railroad served not only the contractors engaged in the construction of the arsenal but also all rail shipment demands of "independent enterprises" within the area, appellee contends he was entitled to written notice of placement of the cars on the interchange tracks under that part of the Note to Rule 3, Sec. E, supra, which provides that notice is required, "where this railroad company uses the interchange tracks for other cars . . ." It is clear from the entire stipulations that no cars were placed on the interchange tracks except cars to be delivered thereon. The fact that such tracks were owned by the government and located in a highly restricted area precluded the use of such tracks for "other cars" as that term is used in the note. We agree with appellant's contention that the obvious intent of the provision

relied upon is to require written notice in those instances where cars other than those to be delivered on the interchange tracks are placed thereon. That condition is not present in the instant case, but it did exist in *Union Gas and Electric Co.* v. *C. & O. Ry. Co.*, 136 I. C. C. 275, relied on by appellee. As reflected in a prior decision of the same case in 126 I. C. C. 566, the tracks there involved were indiscriminately used "for public delivery and for various other carrier purposes."

In disposing of the question of notice in the Farrell case, the court said: "The contention is made that the plaintiff cannot prevail because no notice was given the defendants of the arrival of cars at the interchange tracks. Rule 4, Section C, of the tariffs provides, subject to an exception not applicable here, that delivery 'upon other than public delivery tracks or upon industrial interchange tracks . . . will constitute notification to consignee.' We are satisfied that the interchange tracks at Baldwin were not 'public delivery tracks' and that they were 'industrial interchange tracks' within the meaning of the aforementioned rule; hence, no notice of delivery upon said tracks was required." We concur in this view.

Appellant also contends that interest should have been allowed from the date the various charges accrued instead of from the date of the institution of the suit as the trial court found. The complaint did not expressly pray for interest and there is no showing of any demand by appellant for payment of the charges prior to institution of the suit on May 27, 1954. There also appears to be considerable merit in appellee's assertion that ascertainment of the correct amount of the charges involved a complicated accounting matter which was difficult to resolve without a comparison of appellee's records with those of appellant, which records were not made available until the suit was brought. The term "demurrage" is derived from the maritime law under which the question of the allowance of interest on sums found due on demurrage is held to be within the discre-

tion of the trial court. 48 Am. Jur., Shipping, Sec. 616. Many cases are collected in an annotation on the question in 96 A. L. R. 35. In the exercise of such discretion, the courts have allowed interest from various periods including the date of accrual of the charges as well as the date of commencement of suit. In some cases, as where there was an unreasonable delay by plaintiff in prosecution of the suit, interest before judgment has been disallowed altogether. Under the circumstances presented here, we do not think the trial court erred in refusing to allow interest from the date of the accrual of each of the charges.

Since we conclude that appellant correctly computed the demurrage charges, that part of the judgment finding it entitled to recover only $1,715.98 is reversed, and the cause is remanded with directions to enter judgment for appellant in the sum of $2,195.96 with interest at six per cent from May 27, 1954.